JaSHORTESS, Judge.
Betty W. Love (Love) sued The Waterbed Sleep Shoppe, Inc. (defendant), and its liability insurer, State Farm General Insurance Company[1] (collectively, defendants), alleging she slipped and fell on its premises in Hou-ma, Louisiana, at approximately 3:00 p.m. on September 2, 1991. Her husband, James Love, joined in the suit seeking damages for loss of consortium. (Mr. and Mrs. Love may hereafter be collectively referred to as plaintiffs.) After trial on the merits, the trial court found plaintiffs had failed to bear their burden of proof and dismissed their suit. Plaintiffs appeal.
To prevail in a negligence action against a merchant for damages as a result of an injury sustained because of a fall due to a condition existing on the merchant’s premises, a plaintiff must prove that the condition presented an unreasonable risk of harm to him, that the risk of harm was reasonably foreseeable, that the merchant either created or had actual or constructive notice of the condition before the accident, and that the merchant failed to exercise reasonable care. LSA-R.S. 9:2800.6(B).
Plaintiffs allege Love fell as she entered defendant’s furniture store. The parties do not dispute that it had been raining prior to the accident, that there were puddles in the parking lot, that the primary entrance-way was a twenty-five-foot-wide roll-up, garage-type door, and that defendant’s employees cleaned the store on an as-needed basis. As to almost all other facts in this case, however, we are faced with a classic swearing match.
Plaintiffs both testified that on the day of the accident, there were no signs at the entranceway to warn that the floor was slippery when wet. Ronald H. Arceneaux, a dissatisfied customer of defendant’s who was in the store just before the accident, also testified there were no warning signs. On the other hand, Ray L. |3Hodges, defendant’s president and owner, testified he saw the warning signs in place on the day of the accident. James P. Knoblock, defendant’s sales manager, testified he was “absolutely sure” the signs were in place because he personally put them there.
Plaintiffs both testified that the floor of the qntire store was smooth concrete and that there was no indoor-outdoor carpet anywhere on the floor. Arceneaux testified there was no carpet across the front. However, Hodges testified the floor was carpeted, and Knob-lock testified he was “absolutely sure” it was carpeted. Furthermore, Glynn M. Brunet, who was employed as a salesman for defendant at the time of the accident, testified that green indoor-outdoor carpet covered the entire store, including “just about the whole area of the opening.”
There was also a dispute over Love’s footwear at the time of the accident. Plaintiffs both testified Love was wearing L.A. Gear running shoes. Knoblock, however, testified she was wearing “flip-flops.”
Finally, there were the usual “dueling” experts. Mitchel Wood, plaintiffs’ expert in *652 “code review, building construction, architecture and graduate civil engineering,” examined defendant’s premises during the morning hours on a dry day. Based on the assumption that there were no warning signs and no carpet, Wood found an unreasonable risk of harm existed. He felt the roll-up door was not a proper entryway for a retail establishment, although he admitted no building inspector would cite the use of that type door as a code violation. He also expressed concerns about the adequacy of the lighting of the entranceway, although he performed no tests.
Defendants relied on the testimony of a professional safety consultant, John D. Roberts. Roberts examined the premises in the afternoon following a rain. He stated he purposely made his examination in September during the rainy season in order to duplicate conditions at the time of the accident as closely as possible. He noted the roof slanted to the back of the building so |4that no water drained from the roof to the entrance-way. He walked through the puddle in the entranceway and tracked water in and out of the building, onto both the concrete and the carpet. He found the friction on the wet concrete was not unreasonable. He tested the lighting with a light meter and found it exceeded minimum standards. He stated the type door used did not violate any building or safety codes; he found no code violations whatsoever. Roberts opined that the warning signs used were adequate, that the clean up procedures were adequate based on the size of the store and the low traffic through the store, and that the procedures used were “above average for the industry.”
The trial court obviously found defendants’ witnesses were more credible than plaintiffs’. The court held “the procedure at The Waterbed Sleep Shoppe was in no way negligent. Diligent actions were taken to ensure the safety of the customers entering the store and in no way was the use of the warehouse doorway hazardous.” Implicit in those findings is a determination that plaintiffs failed to meet the requisites of Revised Statute 9:2800.6.
Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be clearly wrong. Am-brose v. Neiv Orleans Police Dep’t Ambulance Serv., 93-3099, p. 6 (La.1994); 639 So.2d 216, 220-221; Stobart v. State, 617 So.2d 880, 883 (La.1993). The widely divergent evidence presented by the parties clearly presented two permissible view of the evidence, and the trial court’s choice of the views advocated by defendants was not clearly wrong.
For the foregoing reasons, the judgment of the trial court is affirmed, at plaintiffs’ cost.
AFFIRMED.

. The petition erroneously refers to "State Farm Mutual Automobile Insurance Company.”